Argued December 15, affirmed December 31, 1914. Former decision
modified and judgment reversed on rehearing March 23, 1915.

## EVERART v. FISCHER.*

(145 Pac. 33; 147 Pac. 189.)

**Infants—Actions—Party Plaintiff.**

1. An action for personal injuries to a minor should be brought
in the name of the real party in interest, and not in the name of the
guardian *ad litem.*

**Infants—Actions—Guardian ad Litem—Objections to Appointment.**

2. An objection that the appointment of a guardian *ad litem* fails
to show that the minor was over 14 and nominated his own guardian
can be raised only by answer or demurrer, and not by objection to
the admission of the order of appointment, where the answer was a
general denial.

**Municipal Corporations—Control by Legislature—Regulation of Mo-
tor Vehicles.**

3. The ordinance of the City of Portland regulating motor vehicle
traffic was not superseded by the Motor Vehicle Act (Laws 1911,
p. 265).

**Appeal and Error—Harmless Error—Admission of Evidence—Preju-
dice.**

4. In an action for injuries to a bicycle rider who collided with
an auto truck, testimony of a witness for plaintiff that she judged
that the truck was going about 30 miles per hour, basing her estimate
on the marks made by the truck which she had described to the jury,
was not prejudicial, especially where defendant's liability did not de-
pend upon the speed of the truck.

**Appeal and Error—Harmless Error—Admission of Evidence—Preju-
dice.**

5. Nor was the testimony of a witness that he presented another's
professional card to the plaintiff in soliciting a damage case preju-
dicial to defendant.

**Municipal Corporations—Use of Streets—Instructions—Motor Vehicle
Lights.**

6. In an action for personal injuries to a bicycle rider who was
struck by an auto truck, the court can instruct the jury as to the
requirement of Motor Vehicle Act (Laws 1911, p. 265), that each
motor vehicle shall display certain lights from one hour after sunset
to one hour before sunrise, although there was no testimony as to
the hour the sun set, since that is a matter of which the court can
take judicial notice.

   [As to judicial notice, see notes in 89 Am. Dec. 663; 124 Am.
St. Rep. 22.]

*As to when an infant is the real party in interest by whom action
must be brought, see note in 64 L. R. A. 610.            REPORTER.

Trial—Requested Instructions—Repetition.

7. Requested instructions which, so far as competent, were covered by those given, were properly refused.

Negligence—Contributory Negligence—Proximate Cause.

8. Contributory negligence of the plaintiff which will defeat a recovery for personal injuries must be a proximate cause thereof.

[As to contributory negligence, what is and when prevents recovery, see notes in 32 Am. Rep. 98; 30 Am. Rep. 190; 38 Am. Rep. 637; 31 Am. St. Rep. 524. As to proximate and remote cause, see notes in 50 Am. Rep. 569; 36 Am. St. Rep. 807.]

Infants—Actions—Appointment of Guardian—Statutory Provisions.

9. Sections 32, 33, L. O. L., providing that when an infant is a party he shall appear by guardian, who may be appointed by the court, and providing that when the infant is plaintiff the guardian shall be appointed on his application, if he be of the age of 14 years, and, if under that age, on the application of a relative or friend, are mandatory, and a guardian cannot be legally appointed for an infant plaintiff of the age of 16 years except on his own motion, and an order of appointment made on the application of a parent of the infant is not a legal appointment.

Infants—Actions—Party Plaintiff.

10. Under Section 27, L. O. L., providing that every action shall be prosecuted in the name of the real party in interest, a parent of an infant 16 years old may not maintain, either in her parental capacity or as guardian, an action in her name; but the cause of action, if any, is in favor of the infant himself and must be prosecuted in his name.

Evidence—Opinion Evidence—Basis of Opinion.

11. A nonexpert witness, who did not see an automobile truck in motion, but who observed marks on the pavement made by the truck, has not sufficient information on which to base an opinion of the speed of the truck.

Evidence—Opinion Evidence—Nonexperts.

12. A nonexpert witness may give an opinion where the facts on which to base the opinion are within his personal knowledge and consist of phenomena within the range of ordinary comprehension, and where the matter about which the opinion is given is incapable of accurate description before the jury.

[As to opinions of nonexperts, see notes in 19 Am. Rep. 410; 30 Am. St. Rep. 38.]

Evidence—Opinion Evidence—Matter Subject for Opinion.

13. The speed of an automobile truck deducible from marks made by the truck on the pavement is not a matter for opinion or expert evidence, but the jury may alone make the deduction from the facts proved.

From Multnomah: George N. Davis, Judge.

Department 2.　Statement by Mr. Justice Eakin.

This is an action by Mary Everart, mother and guardian *ad litem* of Clifford Everart, a minor, against Helmuth Fischer and Paul Fischer, partners doing business as The Wardrobe, to recover for personal injuries.　Clifford Everart, a minor of the age of 16 years, was riding a bicycle north on Nineteenth Street, and claims to have been injured by an auto truck which was going south on said street.　Upon the trial of the action against the defendants plaintiff recovered a verdict, and from a judgment thereon the defendants appeal.　　　　　　　　　　　　　　　　Affirmed.

Modified and Reversed on Rehearing.

For appellants there was a brief with oral arguments by *Mr. Charles J. Schnabel* and *Mr. George Rossman.*

For respondent there was a brief over the names of *Mr. P. J. Bannon* and *Mr. L. W. O'Rourke,* with an oral argument by *Mr. Bannon.*

Mr. Justice Eakin delivered the opinion of the court.

1. The action should have been brought in the name of the real party in interest, but as no question is raised upon that error we will pass it.

Defendants first insist that the court .erred in refusing to instruct the jury to bring in a verdict in favor of defendants; but we find that the evidence was sufficient to require the case to be submitted to the jury on the question of the negligence of defendants.

2. It is assigned as error that the court admitted in evidence the order of the Circuit Court appointing plaintiff guardian *ad litem* for Clifford Everart.　That Clifford was a minor, and the appointment of the

guardian *ad litem* are alleged in the complaint, and no special issue is raised thereto.   There is a general denial of the allegations of the complaint and no objection thereto was suggested at the trial except as to the introduction of an order appointing the guardian *ad litem;* the ground of the objection being that the application for the appointment fails to show that the minor was over 14 years of age and nominated the guardian. Probably that is an issue that should be specially raised by a plea in abatement.   Woerner on the American Law of Guardianship, page 64, says that in practice it is sufficient if the appointment is recited in the count, and the formality is generally waived.   The defendants may take advantage of this defect by demurrer or answer only, and not by motion in arrest of judgment.: *Jones* v. *Steele,* 36 Mo. 324.

3. Defendants also contend that the court erred in the admission in evidence of ordinance of the City of Portland No. 26,255; the ground of the objection being that the ordinance is superseded by the general statute (Chapter 174, Laws 1911) relating to the manner of operating autos, etc.; but the effect of that statute was held not to supersede a city ordinance in the opinion of this court in the case of *Kalich* v. *Knapp,* 73 Or. 558 (145 Pac. 22).

4. Defendants objected to the admission of the testimony of Lottie Hatfield, in which she was permitted to base an estimate of the speed of the auto upon the marks or burns which she claimed were made in the pavement by. the sliding of the wheels when locked. When asked about her knowledge of the speed of an auto, she answered, ''Well, I know pretty well about the speed,'' and the question was repeated, to which defendants objected on the ground that the defendants' case ought not to be influenced by testimony so whim-

sical.  The court said, "The jury can judge as to how
whimsical it is."  She was then asked if she would be
able to approximate the speed of the auto from the
tracks it left in stopping.  She answered she could, and
said, "I should judge from that about 30 miles an hour,
by the depth of the burns."  She only gave her judg-
ment based upon facts which she stated to the jury, and
we do not deem that defendants' case was prejudiced
thereby.  The liability of the defendants would not de-
pend upon the speed of the auto.

5.  Exception is also taken to the admission of the evi-
dence of the witness Gould, in which he states that he
presented Ralph Citron's professional card to Mrs.
Everart in soliciting a damage case.  The evidence did
not in any manner have any bearing upon the liability
of the defendant, and is not ground for reversal.

6. Defendants also contend that the court erred in
instructing the jury as to the provisions of the act of
the legislature (Chapter 174, Laws 1911, p. 265) which
provides:

"Every motor vehicle * * shall, during the period
from one hour after sunset to one hour before sunrise,
display at least two white lights," etc.

This objection is based principally upon the absence
of testimony as to the hour at which the sun sets, but
that is a matter of which the court takes judicial knowl-
edge, and if the defendants thought it important, they
should have asked the court to instruct the jury in re-
gard thereto.

7.  Further, he objects to the refusal of the court to
give certain instructions requested by him; but we con-
sider the points raised, so far as competent at all, are
well covered by those given, and it was made plain to
the jury that the defendants' negligence, in order to

create a liability, must have been the proximate cause of the injury.

8. Defendants contend that if they were guilty of negligence, yet if the plaintiff was also guilty of negligence which contributed to the injury, the plaintiff cannot recover. Negligence on the plaintiff's part which would relieve the defendants of liability must be the approximate cause of the injury, and the requests seek to make it his duty to avoid the accident if he saw the situation at the time. Although the evidence fails to disclose that he carelessly failed to escape by some means available to him as he saw it, and fails to make distinction as to the cause of the injury, contributory negligence of the plaintiff which would defeat recovery must be the proximate cause thereof. It is said in 29 Cyc. 526:

"While it is held that the negligence of the person injured is sufficient to defeat recovery if it contributes in any degree to the injury, yet to defeat recovery plaintiff's contributory negligence must be the proximate cause thereof."

We find no prejudicial error, and the judgment is affirmed.    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE MCNARY concur.

---

Former decision modified and judgment reversed on rehearing March 23, 1915.

ON PETITION FOR REHEARING.

(147 Pac. 189.)

In Banc.    Statement by MR. JUSTICE BURNETT.

This is an action to recover damages resulting from a collision between the plaintiff's minor son and ward

and an automobile operated by the defendants. The defendants having appealed from an adverse judgment, the same was affirmed by department No. 2 of this court in an opinion reported in 145 Pac. 33. A rehearing was granted before the court *in banc.*

The plaintiff opens her complaint with this allegation:

"That the plaintiff, Mary Everart, is the mother of Clifford Everart, a minor of the age of 16 years, and resides with the plaintiff at her home in Multnomah County, Oregon, and that upon the filing of this complaint by order of the court the plaintiff, Mary Everart, was duly appointed guardian *ad litem* to said minor for the purpose of conducting this action."

After averring the partnership of defendants, the complaint goes on to narrate the circumstances of the collision resulting in the injury in question. Among other elements of negligence, the plaintiff charges the defendants with operating their car at an excessive speed of at least 30 miles per hour. The answer denies all the allegations of the complaint except the partnership of defendants and the collision with the automobile, and alleges matter imputing to the minor contributory negligence. This, in turn, was traversed by the reply.                REVERSED ON REHEARING.

Argued and submitted by *Mr. Charles J. Schnabel* and *Mr. George Rossman,* for appellants.

Argued and submitted by *Mr. P. J. Bannon,* for respondent.

MR. JUSTICE BURNETT delivered the opinion of the court.

9. Let it be conceded for the moment that the plaintiff in her capacity as guardian could maintain an ac-

tion for the injury described. Even then, in view of the issues raised by the answer, it became necessary for her to prove her conventional identity. She had to establish her disputed guardianship. It is said in Section 32, L. O. L.:

"When an infant is a party, he shall appear by guardian, who may be appointed by the court in which the action is brought, or by a judge thereof, or a county judge."

It is further laid down in the following section:

"The guardian shall be appointed as follows: (1) When the infant is plaintiff, upon the application of the infant, if he be of the age of fourteen years; or if under that age, upon the application of a relation or friend of the infant."

As the only proof of the disputed allegation already quoted the plaintiff offered an order of the Circuit Court made upon the motion of the plaintiff herself for her own appointment as such guardian, and the court admitted it despite the objections of the defendants. The statute having prescribed the rule in such cases, it is incumbent upon the court to observe its mandates, and a guardian could not be legally appointed for a minor of the age of 16 years except upon his own motion. As said in *Johns* v. *Marion County*, 4 Or. 46, 49:

"Under the statute the court has no power over the subject until a petition of the prescribed character * * is presented, and it is necessary that the record should show affirmatively that jurisdiction has been thus acquired, or the proceeding cannot be sustained."

The order of the court being the only evidence of the guardianship of plaintiff, she utterly failed to prove her disputed allegation on that point. In *Goodale Lumber Co.* v. *Shaw*, 41 Or. 544 (69 Pac. 546), the plaintiff corporation alleged its corporate existence in

an action to recover on a promissory note. The defense considered in the opinion was the general issue, and the court there held that the articles of incorporation offered were not sufficient to prove the averment mentioned and that a nonsuit should have been granted: See, also, *Porter* v. *Hannibal & St. Joseph R. R. Co.,* 60 Mo. 160.

10. Moreover, it is not a question of a plea of abatement. The issue is whether the conventional character who complains has any cause of action at all. The statute has said, in Section 27, L. O. L., that "every action shall be prosecuted in the name of the real party in interest." The plaintiff has no legal grievance against the defendants either in her maternal capacity or in her character as guardian. The cause of action, if any exists, is one in favor of the minor himself, and must be prosecuted in his name. The situation is analogous to one in which Brown would seek to enforce a cause of action existing in favor of Smith. The general issue would raise the question, and, upon the facts appearing as illustrated, judgment for the defendant would necessarily follow. A judgment for or against Mary Everart either as guardian or as mother of Clifford Everart would not bar any subsequent action in his name for the same injury.

11. Another assignment of error rests upon allowing a young lady witness named Lottie Hatfield to give her opinion about the speed of the automobile. She did not see the vehicle in motion nor appear upon the scene until some time after the accident had happened. She testified, in substance, that behind it and in the direction from which the automobile came she observed two black streaks upon the pavement; and, having said in answer to a question, "Well, I know pretty well about the speed," she was asked if she would be able to ap-

proximate the speed of the car from the marks it left in stopping. She answered affirmatively and proceeded to say, "I should judge from that about 30 miles an hour, by the depth of the burns." It is insisted that it was error to allow her to give her expert opinion upon the speed of the automobile from the data presented. Conceding that it was a matter calling for opinion evidence, the conditions were not adequate grounds upon which any expert could form an estimate. The mere marks upon the pavement did not constitute a sufficient basis for that kind of testimony. The ultimate object of the inquiry on that point was the speed of the vehicle. It is reasonable that, if a very heavily loaded car with wheels rough locked were propelled along a pavement at a very slow rate of speed, marks would be left behind. Again, the condition of the tires and of the street as to being rough or even would influence the question. Naturally a very smooth tire upon a very smooth surface, which, in turn, might be affected by a condition of dampness or frost, would result in but a faint marking. A variance in smoothness of either the tire or the pavement would produce different results. There was no testimony about any such conditions, or at least none of them were suggested to or mentioned by the witness. Consequently the foundation for expert testimony did not exist.

12. It is laid down in many cases that, where a person has an opportunity to observe the movement of any vehicle, he may give an opinion as to its speed at the time; it not being a matter of expert testimony. It is believed that the principles allowing a nonexpert witness to give an opinion may be thus stated: (1) The facts upon which he bases his opinion must be within the personal knowledge and observation of the witness; (2) they must consist of phenomena within the range of

ordinary comprehension; and (3) the matter about
which the opinion is given must be incapable of accu-
rate reproduction or description before the jury. By
virtue of this criterion, such witnesses are allowed to
give their opinions as to the identity of persons and
things, as to appearance of anger or pleasure in the
countenance of the people they observe, and the like.
The general rule is that witnesses must testify as to
matters within their personal knowledge. Opinion evi-
dence is in the nature of an exception to this precept.
Rogers on Expert Testimony (2 ed.), Section 6, quotes
from the case of *Muldowney* v. *Illinois Central Ry. Co.*,
36 Iowa, 473, a succinct canon on the subject, as fol-
lows:

"The opinion of witnesses possessing peculiar skill
is admissible whenever the subject matter of inquiry is
such that inexperienced persons are unlikely to prove
capable of forming a correct judgment upon it, without
such assistance; in other words, when it so far partakes
of the nature of a science as to require a course of pre-
vious habit or study, in order to the attainment of a
knowledge of it; and that the opinions of witnesses can-
not be received, when the inquiry is into a subject mat-
ter, the nature of which is not such as to require any
particular habits or study, in order to qualify a man to
understand it. * * If the relations of facts and their
probable results can be determined without especial
skill or study, the facts themselves must be given in evi-
dence, and the conclusions or inferences must be drawn
by the jury."

In *Cook* v. *Stimson Mill Co.*, 41 Wash. 314 (83 Pac.
419), the court had under consideration an action for
personal injuries suffered by the plaintiff in the wreck
of a logging train, the speed of which was involved.
The trial court had admitted the testimony of a brake-
man and a fireman, each of about 2½ years' experience,

who visited the scene of the wreck some time after it happened. It seems that the train was composed of cars loaded with logs, and the engineer in rounding a curve discovered some cattle on the track near at hand. Deeming it the best policy to run through them swiftly rather than undertake to stop, he speeded up the train, which left the track, resulting in the logs slipping forward and forcing the tender against the locomotive. Some of them also slid past the engine so far as to be even with the forward end. Based upon their observation of the situation as thus described, the witnesses gave an opinion about the speed of the train. Commenting upon this testimony, the court said:

"It seems to us that the foregoing testimony was incompetent and should have been excluded. It either requires no expert knowledge to enable one to draw an inference as to the rate of speed of a train from the conditions surrounding a wreck caused by it, or the witnesses in this case were not shown to possess such expert knowledge. In the former case, any inference to be drawn was for the jury alone, and the testimony would be incompetent. In the latter case, the witnesses themselves were incompetent, and their testimony should have been excluded. Furthermore, all the conditions attending upon the stopping of the trains were not known to the witnesses, nor were they embodied in the questions propounded to them. Whether an effort was made to stop the train, or whether it was thrown full speed ahead, and whether all the trucks left the track at the same time, would necessarily have an important bearing on the wreckage produced by the stoppage of the train; and yet these facts were wholly unknown to the witnesses and were not taken into consideration by them in forming the expert opinion. The question here involved was not the rate of speed of a train which a witness sees in motion, and has an opportunity to observe, nor the distance in which a train may be stopped under ordinary conditions, nor any other

question relating to the ordinary operation of trains, or the duties of trainmen, with which railroad men are presumed to be familiar. The conditions were abnormal and unusual, and it certainly cannot be said that a few months' experience around a logging camp, or a couple of years' experience in braking or firing of itself, qualifies one to express an opinion in such a case. If expert testimony is competent at all to establish the rate of speed in a case like this, such testimony must come from witnesses whose knowledge is derived from the observance of similar wrecks under similar circumstances, where the witnesses are familiar with the causes which produced them."

The court reviewed the authorities at some length and reversed the case on the error arising from admitting the opinion of witnesses. In so doing it quotes with approval from *Briggs* v. *Minneapolis St. Ry. Co.,* 52 Minn. 36 (53 N. W. 1019), the following language:

"Courts have gone far enough in subjecting life, liberty and property to the mere speculative opinions of men claiming to be experts, and we are not disposed to extend the rule into the field of mere hypothetical conjecture, which, in a case like the present, must necessarily have been so uncertain and unreliable as to be purely conjectural, and utterly unsafe for either court or jury to adopt."

Mr. Justice BEAN, in *State* v. *Barrett,* 33 Or. 194, 195 (54 Pac. 807, 808), uses this language:

"As a general rule, a witness must testify to facts, and not conclusions or opinions. It is the duty of the jury, and not the witness, to draw inferences from the evidence, and form opinions from the facts presented. The cases in which the opinions of the witnesses are allowed constitute exceptions to this rule, founded on the ground of necessity, because the facts cannot be presented or depicted to the jury precisely as they appeared to the witness, and it is impracticable, from the nature of the subject, for him to relate the facts with-

out supplementing their description with his conclu-
sions: *First National Bank* v. *Fire Assn,* 33 Or. 172 (50
Pac. 568, 53 Pac. 8). Such are questions as to the
identity of persons or things; the age, health, physical
condition, and appearance of a person; the lapse of
time; the dimensions and quantities of things; and
many other instances in which it is impossible to detail
the facts without the use of language which necessarily
implies the conclusion or opinion of the witness. [Cit-
ing authorities.] But the books all agree that such
opinion evidence is never admissible if all the pertinent
facts can be sufficiently described and detailed to the
jury so as to enable it to draw its own inferences and
conclusions therefrom.''

The doctrine of *State* v. *Jennings,* 48 Or. 483 (87 Pac.
524, 89 Pac. 421), is to the effect that, where the facts
observed by the witness can be accurately stated to a
jury, the evidence should be limited to such a recital,
and the witness should not be permitted to state his de-
ductions from such facts. In *Mott* v. *Detroit etc. Ry.
Co.,* 120 Mich. 127 (79 N. W. 3), it is held in purport:
The fact that one has observed bodies move and in mo-
tion a good many times, and has seen horses trot and
run, does not show that he has had sufficient experience
to give his opinion as to the rate of speed a hand-car was
going when a collision occurred between it and a buggy,
where he heard the car approach, but did not see it. In
*Wright* v. *Crane,* 142 Mich. 508 (106 N. W. 71), the rule
is thus in substance stated: A witness who testifies that
an automobile approaching in the dark made no noise
heard by him, that when running at a high rate of
speed it makes but little noise, and that when running
at a low rate of speed it makes much noise, is not com-
petent to estimate the speed of the vehicle. In *Will-
iams* v. *Kansas City etc. R. Co.,* 96 Mo. 275 (9 S. W.
573), the question was about the speed of a train which

collided with other cars. A witness who heard the noise of the collision gave his opinion as to the speed of the train. The court says:

"This witness appears to have been at his stable at the time of the accident, and the only inference from his evidence is that he did not see the cars when they came together. He heard the jam, and from that alone makes his estimate of the rate of speed. * * Whilst the rate of speed of an engine or car may be shown by the opinion of witnesses who saw the engine or car in motion, still such evidence seems to be admitted on the ground that the estimate involves the consideration of many circumstances which cannot be accurately or fully detailed. Hence the conclusion drawn by the witness from the circumstances is admitted. It is but the opinion of the witness. Such an opinion formed by a nonexpert solely from hearing the jam of the cars is of no value, and we conclude entitled to no consideration. The witness, if not an expert, ought to have before his mind and eye something more than the noise made by the jam of the cars to entitle his opinion of the rate of speed of the cars to any consideration."

It was laid down substantially in *Campbell* v. *St. Louis & Suburban Ry. Co.*, 175 Mo. 161 (75 S. W. 86), that, on the mere showing that a person had for 20 years the common experience of a city man traveling on street-cars, he was not competent to give an opinion as to the speed of a car, based on the noise heard at a distance of more than 120 feet.

13. In this case the witness Lottie Hatfield, as stated, did not see the car in motion nor witness the accident. The only circumstance upon which she bases her opinion is the existence of two black streaks on the pavement—something which is a common occurence in any city where automobiles are used. In our judgment it was not a matter for opinion or expert evidence because it did not involve anything of science or tech-

nical learning.  The jury was quite as competent to judge of the speed of the car from that circumstance as a young girl who has not shown herself to be particularly skilled in the use or observation of motor vehicles.  In brief, if she had seen the car in motion at the time of the accident, she could have given her opinion as a lay witness about its rate of speed.  As her testimony on that point, however, involved a deduction from the circumstantial evidence of tracks, it was not for her, but for the jury alone, to make that or any deduction.  Moreover, if it could be considered a matter authorizing opinion evidence, there was not sufficient data disclosed by the testimony to authorize an opinion from even the most learned on such subjects.

These considerations lead to a recession from the former opinion and a reversal of the judgment of the court below.

FORMER OPINION SET ASIDE.    REVERSED.