256

Argued October 9, 1969, affirmed in part; reversed in
part March 11, 1970

ELLIOTT, *Appellant, v.* CALLAN ᴇᴛ ᴀʟ,
*Respondents.*

466 P. 2d 600

*Lynn Moore,* Springfield, argued the cause and filed a brief for appellant.

*William E. Flinn,* Eugene, argued the cause for respondent Callan. On the brief were Jaqua, Wheatley & Gardner, Eugene.

*Richard Bryson,* Eugene, argued the cause for respondent Christopherson. With him on the brief was Windsor Calkins, Eugene.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN,\* DENECKE and HOLMAN, Justices.

O'CONNELL, J.

Plaintiff's decedent, a seven-year-old child, was killed while crossing the street when she was struck by a car driven by one of the defendants. In an action for damages for her death the jury returned a verdict for defendants and plaintiff appeals.

---

\* Goodwin, J., resigned December 19, 1969.

■ Plaintiff assigns as error the trial court's ruling that an eight-year old girl who was accompanying the decedent at the time of the accident was not a competent witness.[1]

The trial judge conducted a thorough examination of the child witness before making his ruling. There was evidence to support the trial court's ruling.[2]

The accident occurred at a school crossing while the decedent and other children were leaving school. The designated speed for such an area was 20 miles per hour and the crossing was so marked. The jury could have found that the defendant driving the car was traveling between 30 and 35 miles per hour at the time he struck the decedent.

One defendant introduced evidence through two police officers that it was a customary practice to drive at speeds in excess of 20 miles per hour. One officer testified that it was customary for motorists to drive at speeds of 30 to 35 miles per hour at the place where the accident occurred and under conditions similar to those existing at the time of the accident. Another officer testified that motorists "commonly" traveled in that zone "at speeds approaching 40 miles per hour." Plaintiff assigns as error the trial court's ruling permitting the officers to testify.

---

[1] ORS 44.030 provides:
"The following persons are not competent witnesses:
"* * * * *
"(2) Children under 10 years of age who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly. Whenever a child under the age of 10 years is produced as a witness, the court shall, by an examination made by itself, publicly or separate and apart with counsel present, ascertain to its own satisfaction whether the child has sufficient intelligence and sense of obligation to tell the truth to be safely admitted to testify."

[2] State v. Bateham, 94 Or 524, 186 P 5 (1919); State v. Jensen, 70 Or 156, 140 P 740 (1914).

The testimony of the police officers that it was customary for motorists to drive at speeds as high as 40 miles per hour at the place of the accident should not have been admitted.

■ ORS 483.104 provides that speeds in excess of 20 miles per hour at a school crossing shall be deemed a prima facie violation of ORS 483.102, the basic rule statute. Defendant may show that in spite of the fact that he was traveling in excess of the designated speed he was nevertheless exercising due care under the particular circumstances.

■ However, defendant attempts to prove that his conduct was reasonable, not by pointing to anything he did in the particular circumstances which would explain why his speed in excess of the designated speed was reasonable, but by drawing an inference from the conduct of others driving through the same school zone. At the base of the inference is the assumption that when other motorists travel at a speed of 40 miles an hour through the particular school zone their conduct in driving at that speed is reasonable. Having established by this process of reasoning that a speed of 40 miles an hour is reasonable for others, defendant prepares us for the inference that a speed of 40 miles per hour for this defendant was also reasonable.

If defendant was permitted to use the evidence of the speed of others in this way, the statute fixing a 20-mile per hour designated speed could, in effect, be repealed by the customary practice of motorists. Every defendant charged with a violation of the basic rule in driving through a particular school zone could in each case produce the same evidence of customary practice and thus a new "designated" speed (now "designated" by the motorists rather than by the legisla-

ture) would be 40 miles per hour in every case involving that zone. Certainly the legislature did not intend the statute to be so evaded.

The designated speed of 20 miles per hour was intended to apply to *all* school zones in the state; it was not the intention of the legislature to let each community establish by the driving habits of the motorists in that community its own policy with respect to the speed in a particular school zone. The statute purports to say that speed in excess of 20 miles per hour in any school zone is prima facie evidence of a violation unless evidence in the particular instance rebuts this prima facie case. Defendant would read the statute to mean that the customary practice in the community can set a new and higher bench mark for the determination of a prima facie violation. There is no basis for such an interpretation of the statute.

Moreover, it is doubtful whether the customary practice of driving at 40 miles per hour or any other speed through a school zone is relevant on the issue of a particular defendant's negligence in driving through the same zone. Under some circumstances what others customarily do may be the basis for a legitimate inference in determining the ultimate question of the defendant's negligence.

Thus, if the question is whether the defendant violated a statute requiring motorists to signal the intention to make a left turn by extending the arm, evidence that motorists in the community customarily signal such a turn by holding the left door open is relevant because it establishes an objective fact upon which motorists rely which can be used as the basis for drawing an inference that due care was exercised.[9]

---

[9] See Howard v. Marchildon, 228 Minn 539, 37 NW2d 833 (1949).

Or the fact that motorists customarily travel at speeds in excess of the posted speed may be relevant in determining whether a plaintiff who is aware of this practice is contributorily negligent in failing to take account of it.[4]

But the conduct of motorists in traveling at a speed of 35 miles per hour or 75 miles per hour or any other speed is an objective fact which does not support an inference that care is being exercised in traveling at that particular speed.

In fact, the inference would seem to run the other way. Motorists often travel at speeds in excess of designated speeds because they are willing to take the chance of injury to themselves or others in order to serve some other interest which they deem more important than safety.

The inference of due care is lacking for another reason. The witnesses testified that other motorists customarily drive at 40 miles an hour under conditions similar to those existing at the time of the accident. But the conditions relevant to the safety of others at any one time cannot in the nature of things be sufficiently similar to those existing at another time to justify the type of analogy attempted here. There are too many circumstances which vary from time to time to regard what is done in one instance as a measure of what should be done in another instance.

Conditions of the street, visibility, the time of day, the number of children, and many other factors determine the kind of vigilance that is required of the motorist.

---

[4] This is the explanation for the admissibility of the evidence in Cucinella v. Weston Biscuit Co., 42 Cal2d 71, 265 P2d 513 (1954). We express no opinion as to whether we would admit the evidence for this purpose, even though the evidence is relevant.

A general statement by witnesses that the conditions are similar cannot be accepted as a satisfactory equation in drawing an inference as to the safety of children in a zone of danger. The admission of this evidence constitutes reversible error.

■ The only negligence charged against defendant Christopherson was that he motioned the decedent to cross the lane of traffic where she was struck by defendant Callan. The error in admitting the testimony of the police officers concerning customary speeds at which other motorists drove in no way relates to the issue of defendant Christopherson's negligence. Since there was no other error affecting the verdict for defendant Christopherson, the judgment must be affirmed as to him.

However, the judgment in favor of defendant Callan is reversed and the cause is remanded for a new trial as to him.

Affirmed in part; reversed in part.

DENECKE, J., dissenting.

I dissent from that part of the decision which holds that the testimony of customary speeds was erroneously admitted.

The basis for my dissent is a disagreement with the majority on the reason why evidence of a custom or practice of any kind is admissible and a disagreement on the effect of the statute providing for designated speeds.

The majority considers the evidence incompetent because it did not point "to anything he [defendant] did in the particular circumstances * * * but by drawing an inference from the conduct of others * * *" seeks to explain why defendant's speed was reasonable.

Evidence of custom or practice of any kind never points to anything the defendant or plaintiff did. In our most recent decision on this issue we held admissible evidence that using an A-frame with two straps and one to dump short logs was a common practice in the area. *Robbins v. Steve Wilson Company,* 255 Or 4, 463 P2d 585 (1970). Obviously, this did not point to anything the defendant did but permitted the jury to judge the defendant's conduct in light of the common conduct of others.

The majority is correct that a motorist may travel in excess of the designated speed for reasons other than the safety of himself or others. This, however, should not make evidence of customary speeds inadmissible. We held in *Robbins v. Steve Wilson Company,* supra, that evidence of a custom or practice was admissible although there was no evidence that the practice was adopted for safety reasons. We held the evidence admissible because evidence that a practice is common is some indication that the community believes the practice is reasonable, whether safety or some other factor motivated its adoption.

I believe the heart of the majority's reasoning is the statement: "If defendant was permitted to use the evidence of the speed of others in this way, the statute fixing a 20-mile per hour designated speed could, in effect, be repealed by the customary practice of motorists." Evidence of a custom or practice does not set a standard of reasonableness.

*Hise v. City of North Bend,* 138 Or 150, 164-166, 6 P2d 30 (1931), settled that controversy in Oregon:

> "The city argues that the trial court erred when it declined to instruct the jury thus: 'If you find that the defendant city constructed and maintained

its wharf in the customary, ordinary and usual manner in which wharves under similar circumstances are constructed and maintained, then I instruct you that the defendants can not be charged with negligence if such wharf was so constructed and maintained.'

"* * * * *.

"We have considered the proposition of law embraced in this assignment of error at length because of the fact that a statement in *Oregon Box, Etc., Co. v. Jones Lumber Co.,* 117 Or. 411 (244 P. 313), indicates that conformity to custom satisfies the demands of due care. We are convinced that that holding is in error, that the trial judge's instruction is without error, and that the requested instruction was properly denied." 138 Or at 164-166.

We have consistently held that evidence of custom or practice is "for consideration by the jury in determining whether the acts or omissions were negligent," and not to establish a standard of care. *Robbins v. Steve Wilson Company,* supra (463 P2d at 587). The jury in the present case was instructed that they could consider the custom and practice of drivers in this area under similar circumstances, along with all the other evidence, in deciding whether the defendant's speed was reasonable. The jurors were free to decide that despite the evidence of customary speeds of over 30 miles per hour the defendant, traveling at over 30 miles per hour, was going too fast.

I also disagree with the majority's views on the effect of ORS 483.104 providing that speeds in excess of the designated speeds "shall be prima facie evidence" of violation of ORS 483.102 (the basic speed law).

Prima facie evidence "is such evidence as in judgment of law is sufficient to establish the fact; and,

if not rebutted remains sufficient for the purpose."
*Miller v. Semler,* 137 Or 610, 613, 2 P2d 233, 3 P2d
987 (1931).

The following are comments of this court upon the
effect of the statute making speeds in excess of the
designated speed prima facie evidence of violation of
the basic rule:

> "Under the statutes of this state (with certain
> exceptions not material in this case) there are no
> 'speed limits', as such, traveling in excess of which
> will, in and of itself, constitute a violation of law.
> Speed of motor vehicles is regulated entirely by
> the provisions of the basic rule. 'Designated speeds'
> for certain districts are not 'speed limits'. The
> statute that provides for certain 'designated speeds'
> merely sets forth a rule of evidence. Whenever the
> question of speed of a motor vehicle is involved,
> the ultimate fact to be determined is whether the
> basic rule has been violated, not whether the ve-
> hicle traveled in excess of the designated speed.
> * * *." *Rauw v. Huling and Sparks,* 199 Or 48,
> 55-56, 259 P2d 99 (1953).

> "Traveling in excess of a 'designated speed' is
> not necessarily a violation of the law. It becomes
> so only when, while so traveling, the basic rule
> as to speed is violated; that is to say, it is the
> violation of the basic rule as to speed, and not
> merely traveling in excess of a designated speed,
> that is unlawful. * * *." *Burrows v. Nash,* 199
> Or 114, 120-121, 259 P2d 106 (1953).

*Winters v. Bisaillon,* 152 Or 578, 54 P2d 1169
(1936), is illustrative of the differences between our
designated speed statute and a speed limit law. A
Portland city ordinance created a speed limit of 25
miles per hour. In an automobile collision case the
trial court refused to instruct the jury that it was
unlawful to operate a vehicle in Portland at a speed

greater than 25 miles per hour. This court affirmed, holding that the Portland ordinance was invalid because it was in conflict with state law. " 'Indicated speed' has an entirely different meaning from either 'lawful' or 'unlawful' speed, the indicated speed being neither lawful nor unlawful." *Winters v. Bisaillon,* supra (152 Or at 586).

Regardless of whether the evidence establishes a speed in excess of or below the designated speed, the same question exists of whether the speed established is reasonable and proper under the circumstances or negligent. Customary practice is admissible as relevant to the question of whether one is negligent and there is no reason why it should not be admissible when the alleged negligence is the speed at which the vehicle is driven.

Should the rule be different when the statute has provided a rule of evidence that a speed in excess of a designated speed is sufficient in and of itself to establish negligence? All other kinds of evidence are admissible to prove that speeds in excess of the designated speed are not in violation of the basic rule.

Other jurisdictions have held that evidence of customary traffic practices is admissible although such practices are contrary to a statute when violations of such statute are only prima facie evidence of negligence.

"However, evidence of a custom or practice is not admissible where it is offered for the purpose of excusing or justifying conduct which violates a statutory standard, Simon v. Carroll, 241 Minn. 211, 62 N.W.2d 822 (1954); Reinders v. Olsen. 60 Cal. App. 764, 214 P. 268 (1923), unless violation of the statute is considered to be only prima facie evidence of negligence, * * *." *American Smelt-*

*ing and Refining Co. v. Wusich,* 92 Ariz 159, 166, 375 P2d 364 (1962).

"* * * In determining whether a plaintiff was guilty of contributory negligence for failure to give the statutory signal for a left turn, but instead held the left door open, under a statute providing that a violation thereof is prima facie evidence of negligence, a common custom of motorists of giving a signal of intention to make a left turn by holding the left door open may be considered not upon the theory that by common consent standards of conduct may be substituted for those which the legislature has prescribed, but upon the one that, where a statute makes a violation of prescribed standards only evidence of negligence, it contemplates that other factors relevant to the question of negligence may be considered. Common custom under similar circumstances with respect to an act, alleged to constitute contributory negligence and declared by statute to be prima facie evidence of negligence, is relevant to determination of the question whether such act constitutes negligence as a matter of fact. * * *." *Howard v. Marchildon,* 228 Minn 539, 545, 37 NW2d 833 (1949).

"While usage and custom cannot change or abrogate norms of reasonable care prescribed by statute, it is to be borne in mind that:

"'* * * where a statute makes a violation of prescribed standards only evidence of negligence, it contemplates that other factors relevant to the question of negligence may be considered. Common custom under similar circumstances with respect to an act, alleged to constitute contributory negligence and declared by statute to be prima facie evidence of negligence, is relevant to determination of the question whether such act constitutes negligence as a matter of fact.'

"It is a customary courtesy for drivers of big trucks which obscure the view ahead to signal following automobiles when the road ahead is clear

of traffic and it is safe to pass. It is also customary for the driver of a following vehicle to take heed of such signal in determining whether it is safe to pass. * * *." *Thelen v. Spilman,* 251 Minn 89, 94-95, 86 NW2d 700, 77 ALR2d 1315 (1957) (Statute prohibited driving on left side of road in passing unless such movement could be made in safety.)