RICHARD B. FRANCIS as President of the Enlli Telephone Company, Respondent, v. STANLEY PERRY, Appellant.

(County Court, Oneida County, October, 1913.)

Associations — unincorporated — cannot properly bring an action in its own name — agreement by a number of residents of a town binding themselves to pay equally for building a telephone line — pleading.

An unincorporated association cannot properly bring an action in its own name; but where a demurrer that the complaint, in an action so brought in justice's court, did not state a cause of action was overruled, and defendant answered, the County Court on appeal from a judgment in favor of plaintiff and for a new trial has power under section 723 of the Code of Civil Procedure to allow an amendment of all processes and pleadings by inserting the name of the president of the association as plaintiff.

Where, in an agreement signed by a number of the residents of a town binding themselves to pay an equal share for building a telephone line to their respective residences, which line was built and paid for, there was nothing providing that the *status quo* therein provided for should be mantained forever or for any definite time, it was within the power of the association, which was unincorporated and had no constitution or by-laws, to amend the agreement at any time by a proper vote of the interested parties so as to provide for the purchase and the operation of an independent exchange for the association and for the necessary extension and alterations to meet changed conditions.

Where a majority of the members of the association were present and voted at the meeting where the changes of the original agreement were made, all the members of the association were bound by said action, though the affirmative vote for the expenditure involved may not have been made by a majority of the members of the association, provided that such majority voted one way or the other on the proposition.

The conflicting evidence bearing upon the question of fact as to whether a committee appointed at a meeting duly held

was given power or whether it was simply authorized to investigate the cost of the proposed improvement and report back, considered, and held, that while the resolution offered at said meeting did not authorize the doing of the work, the vote after long debate was in favor of the new exchange and was followed by the election of a committee with power to act.

When a question of fact arises as to what was the action of an unincorporated association at one of its meetings, its minute book when properly proven may be received as some evidence of what was the action.

Where, after the death of his father who was one of the signers of the original agreement, defendant suffered himself to be elected a member, apparently accepted the membership and acted as a member of the association, he will, in an action to recover the pro rata share of the expense of the new exchange, be deemed a member and liable for the amount demanded in the complaint.

Appeal from judgment of Justice's Court in the town of Remsen, and for a new trial. Case tried before the court without a jury.

B. A. Capron and Josiah Perry, for appellant.

R. B. Jones and E. M. Willis, for respondent.

Hazard, J. The Enlli Telephone Company is an unincorporated association consisting of fifteen or sixteen members. This action was originally brought in its name as plaintiff. In the Justice's Court a demurrer was interposed, intended to raise the question of the propriety of bringing the action in that manner. The demurrer was overruled, and thereupon the defendant answered. The issue thus raised was tried out before a jury, and the plaintiff recovered. From that judgment defendant has taken an appeal,

asking for a new trial in the County Court. The Enlli Telephone Company has figured as plaintiff throughout all this procedure. Upon the case coming up for trial in the County Court the objection was again raised, viz: that the complaint did not state a cause of action (in favor of the Enlli Telephone Company). A motion was then made by the plaintiff to amend all processes and proceedings by inserting the name of Richard B. Francis as president of the Enlli Telephone Company. This motion was granted, but it is urged that the court was without power so to do. There can be no doubt, and in fact no argument is made on the proposition, that the bringing of the action in the name of this unincorporated association was improper. Had defendant rested when his demurrer was overruled and appealed upon questions of law, there could be no question of the outcome. However, he has seen fit to interpose an answer, and to take an appeal, asking for a new trial. He, therefore, comes into this court upon the pleadings consisting of a complaint and his answer, and, while he well might raise the question of the sufficiency of the pleadings and proceedings, I think that under all the circumstances the County Court had power under section 723 of the Code of Civil Procedure to allow the amendment. McKane v. Democratic General Committee, 14 Civ. Pro. 126; Messler v. Schwarzkopf, 35 Misc. Rep. 72; Dean v. Gilbert, 72 N. Y. St. Rep. 106; Thompson v. Colonial Assurance Co., 33 Misc. Rep. 38.

In the latter case it was held that the action was improperly brought under section 1919 of the Code, and the demurrer was sustained on that ground, but leave was there given to amend. While the power to do so has been attacked in the appellant's brief, I think that both in reason and in law it was vested in this court and was properly exercised.

The plaintiff concern was organized very informally in 1908. Fifteen residents of the town of Remsen signed an agreement binding themselves to pay an equal share for building a telephone line to their respective residences. The line was built and paid for. The parties proceeded with considerable informality, never having adopted anything that amounts to even a constitution or by-laws, but they held meetings and elected officers, and without going more into detail it may be fairly said to be proven that they became what is in law known as an unincorporated association, existing for the purpose of maintaining an independent telephone in the residence of each of its members. For some years they had their central switching done by another concern, but the cost constantly increased and the subject of making different arrangements — in short, having their own exchange — began to be agitated. At a meeting held June 29, 1911, a committee was appointed to meet with certain other similiar associations " and to do business with them." Another meeting was held March 8, 1912, at which it is claimed the committee reported, and a vote was there taken upon the question of whether the Enlli Telephone Company should operate its own exchange. Twelve members were present, eight of whom voted in favor of the proposition and four against it. A committee of three was then appointed, and this committee proceeded to purchase and install an exchange. All the members of the association were connected with the new exchange and the expense of it divided equally among the members. Several of them refused to pay, including the defendant, and it is to recover the assessment comprising the defendant's pro rata share of installing the exchange, that this action is brought.

It is claimed on the part of the defendant-appellant

that the extension of the line necessary to carry out the different arrangements with reference to switching was outside of the power and scope of the association; that its power and scope was limited strictly by the original agreement signed by the fifteen original members, and that the organization had no power to alter or change that line in any manner; in short, to reduce the defendant's contention to legal verbiage, they say the act of the association in extending its line and erecting or participating in the erection of an exchange was *ultra vires*. The proposition is argued at great length by both sides and we must examine it. As above stated, the concern is practically without either constitution or by-laws. It started out with an informally drawn contract, the substance of which has already been stated, and the question is as to whether it must for all time be bound strictly by the terms of that contract, or whether it might broaden out and increase its membership and its scope. Appellant's counsel says that, if it might extend its lines for a few rods, it might extend them even as far as Utica, or indeed it might go to New York with the line, and seems to think the argument conclusive against the power of the corporation to extend its lines for the few rods in question. After deliberation I am utterly unable to agree with that proposition. If we view the original agreement as a contract, we find nothing whatever in it providing that the *status quo* therein and thereby provided for should be forever maintained or maintained for any definite length of time. As a mere matter of contract, there is nothing to prevent a subsequent amendatory agreement. If we treat that contract as the constitution, or if we might stretch a point and regard it as the by-laws of the association, still there is nothing

in it which prevents or interferes with its being amended at any time by proper vote of the interested parties.   I think the association had powers, within the reasonable scope and line of its purpose, to make any change that its members saw fit.   Ostrom v. Greene, 161 N. Y. 362.

It seems also clear to me and beyond the need of discussion that the trivial extension and the alteration to meet changed conditions were fairly within the scope and purpose for which the association was originated.   Appellant has used considerable ingenuity in throwing obstacles in the way of the collection of this assessment and urges that, even assuming the changes in question were *ultra vires,* that such changes were not authorized by a majority vote of the association.   He claims that the association consisted of sixteen members, whereas only eight voted in favor of the proposition, and that it was, therefore, lacking of a majority.   He cites 4 Cyc. 310, which says, "A majority of members, however, possess authority to control the action of the association as to all matters within the scope of the objects for which the association was formed, whether such objects are mentioned in the articles of the association or are necessarily applied therefor."   If this is to be taken for a literal statement of the law, and if the plaintiff concern consisted of sixteen members, of course it follows that eight of its members did not constitute a majority.   The proposition is ingenious, but I think lacks merit.   In the absence of anything in the nature of by-laws, I think it may be said that in an association of just this kind it might require a majority of all the members to constitute a quorum, or perhaps to bring the action of the corporation within the above stated rule quoted from Cyc.   It is held in Ostrom v. Greene, 20 Misc. Rep. 177, 184, that it is not even

necessary for a majority of members to be present at a meeting. In the same case, in the Court of Appeals, 161 N. Y. 353, the court seems to more or less tentatively concede that where there is a limited number of members a majority of all the members might be necessary to constitute a quorum (p. 363). Later on (p. 365) it says: "A majority is entitled to control, and the minority, however hard it may be, must submit." I think upon all the authority that I have been able to find that I must decide that, if a majority of the members of this association were present and voted at the meeting, the members are bound by such action, notwithstanding that the affirmative vote for the expenditure involved may not have been made by a majority of the members of the association, provided a majority of the association voted one way or the other on the proposition.

We now come to the question of fact which was sharply litigated in this action which was as to whether at the meeting of March 8, 1912, the committee of three then appointed were given power, or whether they were in fact simply authorized to investigate the cost of the proposed improvement and report back. Much hard swearing on this subject has been done by both sides; in fact, this controversy, unimportant as far as financial amounts go, seems to have been taken very seriously by the members of the association, and the residents in that neighborhood. At the outset of this question another point is raised as to the status as evidence of the minute book kept by the organization. A book was produced and identified as the minute book kept by the secretary of the association. It was testified by several witnesses that the secretary (now deceased) kept the book in the usual manner; that he was seen to write in it at meetings, and several witnesses stated that so far

as the minutes of the meeting in question were concerned it correctly described the action taken. Some more of them say that it does not state the resolution in full. The minutes were received in evidence by the court for what they were worth, and we may briefly consider how much that is. There seems to be little law on the subject as applied to unincorporated associations. As applied to corporations, it has been held that the records constitute even the best evidence of corporate action. Dennis v. Joslin Mfg. Co., 19 R. I. 666; Highland Turnpike Co. v. M'Kean, 10 Johns. 156; Partridge v. Badger, 25 Barb. 171.

While I do not find any direct authority, at least in this state, I think we may reason by analogy and hold that, where a question of fact arises as to what the action of an unincorporated association at one of its meetings was, the books when properly proven may be received as *some* evidence of what that action was. The trouble of reaching a decision of who is right in his contention as to whether authority was or was not given this committee, is not eliminated by reference to the minute book, and we get very little assistance from it, because the record, eliminating grammatical errors, reads: " Moved and carried that R. B. Francis, William Jones and M. Owen act as a committee to meet the other telephone companies and see about a new telephone exchange." Having recourse to oral testimony given in the case we find that several witnesses have testified on behalf of the plaintiff that the committee was given power to proceed, and a slightly larger number have testified that the committee was not given power. This is the question around which this litigation revolves, and over which many of the inhabitants of the town of Remsen are at war. If we might settle it by the simple process of counting witnesses, the defendant would have

a preponderance, but manifestly that method is improper, and we have to consider the testimony of these various witnesses in the light of probability and in connection with the undisputed evidence of the case. At the end of the trial I carried away a distinct impression that the resolution in question did in fact authorize the doing of the work in question. I have re-read the evidence several times and examined the exhibits, and still have that impression. A brief review of the admitted facts probably will explain it. As early as June, 1911, a committee had been appointed to make practically the same investigation as it is claimed now that the committee appointed March 8, 1912, was to make. It does not seem likely that one committee after another would be appointed simply to investigate. Again at the meeting of March eighth, and presumably after the previously appointed committee had reported, although the question of whether it did report at all was controverted, there was undoubtedly a very considerable controversy among those present, and a number of speeches were made, and considerable acrimony developed. Then a vote was taken. The minutes say, it was a " vote for a new central." That vote stood eight in favor to four against. Nor is there any question about that vote or what was voted on. Mr. Robert R. Pritchard, at one time a president of the Enlli Telephone Company, and apparently a leader in the defence, testified: " We voted eight to four on the question of how many were in favor of a new central and how many opposed." Beyond all controversy that vote was not on any tentative proposition, and it occurred after long debate, and was a roll call vote, the minutes showing who voted for, and who against, in detail. It was satisfying to my mind that, after such a vote was taken and the committee ap-

pointed, the purpose of that committee was not simply to investigate and report. I am persuaded that it was the intention and understanding of those present that they were voting finally for or against a new exchange, and that question was settled. It was followed by the election of a committee, and it seems to me to hold that that committee was not given power, and to believe those who say it was not, would be indulging in doubts that have no real foundation or support under the facts and circumstances surrounding the situation. I do not think that any one of the defendant's witnesses intentionally testified falsely but it seems to me palpable that they are mistaken in saying that, after the association had committed itself by an eight to four vote on the proposition of having a new central and appointing a committee, that committee was not authorized to do business. Even the committee of June 29, 1911 (as appears by the minutes) was "authorized to do business." One or two meetings a year seem to have been all that that association had, and, if it would vote and commit itself to the question of putting in a new exchange, it seems idle after having so committed itself to appoint a committee simply to find out what it would cost. They had decided to have it anyway, according to the testimony of defendant's own witnesses.

But even after deciding the question of fact adversely to the defendant's contentions we are met with another proposition which it is claimed absolves him from liability. It is claimed that the defendant is not a member of the Enlli Telephone Company, and we have to consider that question. Defendant's father was one of the signers of the original association agreement. He died in 1910. Thereafter defendant attended a meeting of the plaintiff association, and he says that a motion was made that he

(the defendant) be taken as a member. He says he said nothing in opposition or otherwise, and that he was elected as a member. He admits that he voted at meetings thereafter; that he became an officer of the association, and that he paid some assessments. He, however, says that he used money which he obtained from his mother, who was administratrix of his father's estate, to pay these assessments, but it is not claimed that he so stated to any one connected with the plaintiff concern. It is said in American and English Encyclopaedia of Law (Vol. 25 [2d ed.] 1134) : " Whether a person is or is not a member of an association is a question of fact, to determine which the intent and understanding of the parties at the time such person is alleged to have become a member, as well as his subsequent acts, may be considered by the jury." If the foregoing expression represents the law on the subject, and I think it does, it seems to me that this defendant is estopped from raising any such claim. It does not appear to be either fair or just or legal. Concededly he voted upon the very proposition at issue, and I think he should not be heard to say that he had no right so to do. It is quite true that if the question were one between his father's estate and the company, or him, that a different conclusion might be reached; but, as between this defendant and the company which for several years he had assumed to be a member and officer of, I do not think he should be heard to say that he had all the while been acting in a representative capacity, entirely without any warrant or authority from any one. He suffered himself to be elected a member, apparently accepted the membership and acted as a member, and I think must now be held, so far as the present situation is concerned at least, to be a member.

If the foregoing conclusions are correct, this de-

County Court, Nassau County, October, 1913. [Vol. 82.

fendant and all the other members of the association are liable for their pro rata shares. Their situation is somewhat analogous to that of the stockholders of a corporation, liable for assessments. It is probably accurate to say that so far as the committee is concerned, acting for the association, they bind the members as their agents, and that the committee of three then appointed in the matter of the extension and switch board in question were the agents of this defendant and the other members. McCabe v. Goodfellow, 133 N. Y. 89, 95. The committee having gone on and incurred expenditures on account of the association, and as has been held with the consent of the association, the members are liable for their pro rata share. Troy Iron & Nail Factory v. Corning, 45 Barb. 231.

The plaintiff may, therefore, have judgment for the amount demanded in the complaint, with costs.

*Judgment for plaintiff.*