Argued March 23, reversed and remanded April 10, 1917.

# CROWDER v. YOVOVICH.*

### (164 Pac. 576.)

**Fraud—Evidence—Question for Jury.**

1. In a suit for damages for deceit in the sale of lands, the value of furniture owned by plaintiff and given in exchange as a part of the consideration for the conveyance of defendant's land, *held* for the jury.

**Appeal and Error—Review—Findings.**

2. A jury finding on conflicting evidence will not be disturbed on appeal, if there is any evidence to sustain it.

**Fraud—Principal and Agent—Undisclosed Principal—Right to Sue for Damages for Deceit.**

3. As the rule that an undisclosed principal may sue upon a contract made by his agent to the same extent as if its relation to the contract was known at the time it was entered into does not apply to the case where an alleged agent made affidavit that he was the owner of personal property exchanged for real estate, and gave a promissory note in his own name, and in every way acted as principal in making the contract, and hence the undisclosed principal cannot sue for deceit practiced upon the agent.

**Evidence—Parol Evidence to Vary Written Agreement.**

4. Where the agent of an alleged undisclosed principal annexed to his bill of sale of the personal property exchanged for real estate, an affidavit that he is the owner of such property, parol evidence tending directly to contradict the terms of the bill of sale was not admissible.

**Estoppel—Undisclosed Principal—Right to Sue for Damages for Deceit.**

5. Where the owner of personal property permitted an alleged agent to contract for the exchange of such property for real estate, and represent himself as principal in the contract as owner of the property, and to give his personal obligation as such, such owner was forever barred from contradicting the alleged agent's misrepresentations, and had no cause of action for deceit practiced upon the agent.

> [As to suits by undisclosed principals on contracts made with their agents, see note in 55 **Am. St. Rep.** 916.]

**Parties—Pleading—Plea in Abatement.**

6. Where a complaint in an action for deceit practiced on plaintiff in exchange of personal property for real estate stated a cause of

---

*On character of contract as affecting right of undisclosed principal to sue thereon, see note in 29 L. R. A. (N. S.) 472; 39 L. R. A. (N. S.) 324.

Generally on the question that parol evidence is not admissible to vary, add to or alter a written instrument, see note in 17 L. R. A. 270.

REPORTER.

action, and did not state that the contract was made by or through an agent, or alleged representations were made to an agent of plaintiff, the defense in such exchange dealt with another person who purported to act as principal, and that plaintiff had no capacity to sue as undisclosed principal, was not in the nature of a plea in abatement.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Action by Bertha M. Crowder against Yanko Y. Yovovich. From a judgment in favor of plaintiff, defendant appeals. Reversed and remanded.

Department 2.        Statement by MR. CHIEF JUSTICE MCBRIDE.

This is a suit to recover damages for deceit in the sale of lands. The complaint alleges that on June 17, 1914, plaintiff owned certain furniture, including bedroom suites, chairs, etc., situated in a rooming-house in the City of Portland, and that defendant was the owner of a certain 40-acre tract of land situated in Lane County, Oregon; that at said date defendant by reason of false representations as to the character and capabilities of the land, all of which are particularly set forth in the complaint, induced plaintiff to purchase the same and to give in exchange therefor the personal property described in the complaint and to execute to defendant a note for $295, secured by a mortgage upon the land conveyed; that the land was practically worthless, and that upon discovery of his fraudulent representations she tendered back to him a warranty deed to the same, and demanded a restoration of the property conveyed to him, but defendant refused to accept such conveyance or to restore said property; that by reason of defendant's fraudulent conduct she has been damaged in the sum of $2,500. The defendant answered denying the alleged fraudulent representations and asserting the property transferred to him was not worth to exceed $400 over and

above an indebtedness of $295 due thereon. The answer denied plaintiff's ownership of the personal property assigned to him, and alleged that he conveyed the land to one J. A. Barnes, and that the furniture and fixtures were in the name of J. A. Barnes. On the trial the plaintiff testified that she was the actual owner of the property; that it was held in the name of J. A. Barnes; that she had several conversations with defendant during the negotiations; that she did not remember telling him that Barnes was the owner of the furniture; that she was trying to keep her name out of it; that all the money invested in the lodging-house and furniture was hers absolutely; and that Barnes had never contributed a cent toward its purchase. Barnes testified to the same effect; that Mrs. Crowder purchased the property from Nellie Stacey with her own money, that the bill of sale was made to him at plaintiff's request, and that he held it as trustee for her. De Forest testified that it was listed for sale in his office by Barnes, but that he had always supposed until the bill of sale to defendant was made out that plaintiff was the real owner of the property. The bill of sale of the furniture, etc., was executed by Barnes, and to it was attached the following affidavit:

"State of Oregon,
   County of Multnomah,—ss.

"I, J. A. Barnes, being first duly sworn on oath depose and say that I am the sole and lawful owner of the goods mentioned in the within bill of sale, and that same are free from all incumbrances except the sum of $295 due Edwards Company of the city of Portland, Oregon, as set forth within the bill of sale.
                                        "J. A. BARNES.

"Subscribed and sworn to before me this 18th day of June, 1914.
                        "CARL J. WANGERIEN,
                     "Notary Public for Oregon."

At the same time and as a part of the same transaction defendant executed and delivered to Barnes, as grantee, a warranty deed to the land described in the complaint, and Barnes executed a promissory note in favor of defendant for the sum of $295, with interest at 7 per cent per annum, payable three years after date, and also executed and delivered a mortgage upon the land to secure the same. Prior to the commencement of this action he executed a conveyance of the land to plaintiff. Upon the trial there was a verdict and judgment for plaintiff for the sum of $600 damages, from which defendant appeals.

REVERSED AND REMANDED.

For appellant there was a brief over the name of *Messrs. Johnson & Mathews,* with an oral argument by *Mr. George C. Johnson.*

For respondent there was a brief over the names of *Mr. Fred W. Hummell* and *Messrs. Wilbur, Spencer & Beckett,* with an oral argument by *Mr. Hummell.*

Opinion by MR. CHIEF JUSTICE McBRIDE.

1, 2. The testimony as to the false representations and as to the value and character of the land is very conflicting. Plaintiff's witnesses place it all the way from a mere nominal value up to not in excess of $400, while defendant's witnesses value it from $1,000 up to $7,500, including the timber; and this estimate if we were to credit it would indicate that defendant was badly worsted in the trade. On the other hand, defendant's witnesses place a value as low as $300 upon the furniture, etc., while some of plaintiff's witnesses place it as high as $1,800. All this was for the jury, and we are not permitted to disturb the verdict in that

respect if there is any evidence to sustain it, as there certainly is.

3. The principal contention here centers around the admission of the oral testimony of plaintiff and Barnes tending to show that she was the real owner of the property traded to defendant and that Barnes was acting as her agent. The testimony does not disclose that defendant was ever informed that plaintiff was the real principal, but rather that this fact was kept in the background; plaintiff testifying, "I wanted to keep my name out of it." It is a familiar rule that an undisclosed principal may sue upon a contract made by his agent to the same extent as if his relation to the contract were known at the time it was entered into: 2 Mechem on Agency (2 ed.), § 2059, and cases there cited. It would seem logically to follow that the undisclosed principal can recover damages for a deceit practiced upon his agent in the course of a transaction in any case in which he would have a legal right to enforce the contract if no deceit had been practiced. But to the rules above announced there are exceptions as firmly supported by precedent as are the rules themselves, and we are of the opinion that this case comes within these exceptions, which are thus stated by Mr. Mechem:

"Section 2070. Principal cannot sue where terms of contract exclude him or where contract is solely with agent personally. The right of the principal to sue upon the contract made by the agent in his own name flows from the fact that the agent made the contract in reality, though perhaps this may have been unknown to the other party, as the agent of the principal, and by his authority; and the principal is, therefore, entitled to enforce the contract, not only upon the ground that the benefits of his agent's acts accrue to him, but also upon the ground that he is himself, when discovered, liable upon the contract to the other

party.  If, however, as is competent to be done, the other party has, (1) dealt with the agent as being in fact the principal and upon terms in a written contract which exclude the existence of any other principal; or (2) with knowledge of the agency, has elected to deal with the agent alone, and the agent has pledged his individual credit, there it is held that the undisclosed principal is not a party to the contract and cannot enforce it.  To permit the principal to enforce the contract in the first case is to contradict the writing; and, in the second, to deny to the other party the benefit of his choice of parties.  Every man has a right to determine for himself what parties he will deal with, and if the other party has expressly dealt with the agent, as the party to the contract, to the exclusion of a principal, he cannot be made liable to the principal.''

Here the contract is expressly with the alleged agent.  The credit for the deferred payment is extended to him.  His promissory note is taken for it, and his mortgage secures the note, and with the knowledge and acquiescence of his alleged principal he annexes to his bill of sale of the property an affidavit in which he swears that he is the owner of the property.  The oral evidence offered tended directly to contradict the terms of a written instrument and was inadmissible.  The leading English case on this subject is *Humble* v. *Hunter,* 64 Eng. C. L. 310.  In this case the plaintiff sued the defendant on a charter party executed by her son, as her agent, in his own name without disclosing to the defendant that he was such agent.  The contract read:

''It is mutually agreed between C. J. Humble, Esq., owner of the good ship or vessel called The Ann,'' etc.

The court refused to hear evidence that the son was not the real principal, distinguishing the case from the ordinary one of an undisclosed principal suing on a written contract, on the ground that the son in this

case *expressly* stipulated that he was the owner of the ship and the principal in the transaction, and that, therefore, the evidence contradicting the writing was inadmissible; saying, among other things, that the doctrine that an undisclosed principal may demand the benefits of a contract made by his agent ''cannot be applied where the agent contracts as principal; and he has done so here by describing himself as 'owner' of the ship." The same rule was announced by Mr. Chief Justice MARSHALL in *Graves* v. *Boston Marine Ins. Co.,* 6 U. S. 418, 438 (2 L. Ed. 324), a case in equity to correct a policy by reason of an alleged mistake whereby it was claimed that the names of some of the real principals had been omitted: See, also, *Winchester* v. *Howard,* 97 Mass. 303 (93 Am. Dec. 93); *Moore* v. *Vulcanite etc. Co.,* 121 N. Y. App. Div. 667 (106 N. Y. Supp. 393); *Darrow* v. *Horne Produce Co.,* 57 Fed. 463; *Kelly* v. *Thuey et al.,* 102 Mo. 522 (15 S. W. 62), overruled in *Kelly* v. *Thuey,* 143 Mo. 422 (45 S. W. 300), by a divided court; *Thomas* v. *Kerry,* 66 Ky. [9 Bush] 619 (96 Am. Dec. 262); *Boston Ice Co.* v. *Potter,* 123 Mass. 28 (25 Am. Rep. 9). None of the cases cited by plaintiff contradict or question the doctrine announced in *Humble* v. *Hunter,* or in *Graves* v. *Boston, etc., supra,* but they are all cases where the alleged agent has not affirmatively represented himself as owner.

5. Another reason why plaintiff should not be allowed to stand in the position of an undisclosed principal is that she stood by and allowed Barnes to represent himself as principal and to contract and give his personal obligation as such. As remarked in *Humble* v. *Hunter,* 64 Eng. C. L. 310, such a rule would deny to the other party the benefit of his choice of parties. Every man has a right to determine for

himself what parties he will deal with and if the other party has expressly dealt with the agent as the party to the contract to the exclusion of a principal he cannot be made liable to the principal: *Boston Ice Co.* v. *Potter,* 123 Mass. 28 (25 Am. Rep. 9). In order to uphold the judgment in the case at bar we would be compelled to ignore the sworn representation of Barnes, made with the acquiescence of plaintiff, that he was the owner of the furniture described in his bill of sale, as well as of the negotiable note and mortgage given by him, and to require defendant to litigate his contract with a person with whom he had no intention of contracting. We are of the opinion that the plaintiff cannot maintain this action.

6. It is further contended that the defense urged was that the plaintiff had no legal capacity to sue, and that such defense was in the nature of a plea in abatement, and not having been so pleaded it was waived. This contention is not sound. The complaint did not in any form state that the contract was made by or through an agent or that the alleged misrepresentations were made to an agent of plaintiff. It stated a good cause of action. The proof showed a state of facts which, as we hold, showed that plaintiff did not at the commencement of the suit have any cause of action. The fact that defendant traded with another person and in the course of the trade made material false representations to him could not under any circumstances "give plaintiff a better writ," nor enable her at any time in the future to prosecute an action. If A assaults B and injures him, and C brings an action for damages asserting that he was the person assaulted, and that fact is denied, this does not raise an objection predicated upon his want of capacity to sue, but upon his right to recover. There is a failure

of proof as to the fact of his being injured. So here there was no legal right in plaintiff to recover, and the nature of the transaction was such that she could adduce no legal evidence that she was the person injured. In *Dewey et al.* v. *State,* 91 Ind. 173, 182, the court states the distinction above enunciated as follows:

"It is settled by the decisions of this court that the second statutory cause of demurrer, namely, 'that the plaintiff has not legal capacity to sue,' has reference only to some legal disability of the plaintiff, such as, infancy, idiocy, or coverture, and not to the fact * * that the complaint fails to show, upon its face, a right of action in the plaintiff."

To the same effect is *Pence* v. *Aughe,* 101 Ind. 317, and many other cases. See, also, 1 Corpus Juris, page 28, Section 9, where the rule is thus stated:

"Matter in abatement, which goes merely to defeat or suspend the present suit, and does not conclude plaintiff from maintaining an action upon the cause stated, and which is, therefore, to be set up by plea or answer in abatement, is to be distinguished from matter in bar, which goes to the merits and shows that plaintiff has no cause of action."

In the case at bar the plaintiff having permitted Barnes expressly to contract as owner of the property was forever barred from contradicting his written representations to this effect, and, therefore, had no cause of action which she could enforce by an action at law.

The judgment is reversed and the cause remanded to the Circuit Court for proceedings not inconsistent with this opinion.          REVERSED AND REMANDED.

MR. JUSTICE MOORE, MR. JUSTICE BEAN and MR. JUSTICE McCAMANT concur.