Argued December 5, 1962, reversed and remanded in part;
affirmed in part January 30, 1963

# HANN ET AL *v.* NORED

378 P. 2d 569

*Clifford N. Carlsen, Jr.,* Portland, argued the cause for appellants and cross-respondents. With him on the briefs were John W. Hill, William B. Crow and Paul T. Bailey, Portland.

*Harrison M. Weatherford,* Albany, argued the cause for respondent and cross-appellant. On the brief were Weatherford & Thompson, Albany.

Before McAllister, Chief Justice, and Rossman, O'Connell, Lusk and Denecke, Justices.

DENECKE, J.

Plaintiffs are trustees of a health and welfare trust fund for carpenters. They brought this suit in equity to secure performance of two alleged contracts by the defendant employer to make contributions to this fund.

The defendant denied any obligation and asked to have one of the purported contracts rescinded. A trial was held and the court dismissed plaintiffs' complaint, as well as defendant's counterclaim for rescission. Plaintiffs appealed and defendant cross-appealed.

■ No findings or conclusions were made. This was in equity and none were required. The court wrote counsel: "* * * it is my conclusion that plaintiffs have failed to establish paragraph I of their amended complaint and for that reason plaintiffs cannot prevail. It is also my opinion that the defendants have failed to establish either of their separate answers and defenses * * *."

Paragraph I of plaintiffs' amended complaint is as follows:

> "Plaintiffs are the Trustees of the Oregon-Washington Carpenters-Employers Health and Welfare Trust Fund, duly appointed and acting in accordance with that certain agreement designated 'Trust Agreement, Oregon-Washington Carpenters-Employers Health and Welfare Trust Fund,' executed the first day of January, 1956, and amended November 5, 1956. A copy of said agreement marked Exhibit A is attached hereto and by this reference made a part hereof."

Defendant on lack of information or belief denied paragraph I and all other allegations of the amended complaint. Except for this general denial there is nothing in the record, including the closing arguments, to indicate that the matter alleged in paragraph I really was an issue.

Paragraph I states plaintiffs were trustees, duly appointed and acting in accordance with the trust agreement. W. M. Perrault, one of the plaintiffs, testified he was a trustee of the Oregon-Washington Car-

penters-Employers Trust and Chairman of the Board
of Trustees. The trial court indicated during Mr. Per-
rault's testimony that it did not want to hear the wit-
ness testify on the operation of the Board of Trustees
under the trust. The Trust Agreement was received
into evidence. Perrault further testified: "* * *
plaintiffs here are successors to the Trustees named
in the original Trust Agreement." Actually, three of
the plaintiffs were original trustees designated in the
trust instrument. The witness was not cross-examined.
No other testimony on this subject was offered by any
party.

Perrault's testimony established that the
plaintiffs were trustees. We find this uncontradicted
evidence to be conclusive of the fact. *Rickard v. Ellis,*
230 Or 46, 368 P2d 396, 398. The trust agreement
grants the trustees the power to enforce prompt pay-
ment of contributions. Therefore, they were acting in
accordance with the trust agreement.

The only remaining question is whether they were
duly appointed. This is the only deficiency urged by
defendant. Defendant points out that the trust agree-
ment requires that the employer trustees shall have
their appointment confirmed by a writing by the em-
ployer association directed to each of the other parties.
It also requires that the trustees representing em-
ployees shall be appointed by the parties specified.
There was no proof of this. Need there be?

This is not a question of legal disability to sue, as
is involved if a plaintiff is allegedly an infant. It is not
a question of real party in interest, as is involved if
someone other than a plaintiff allegedly owns the cause
of action or will receive the benefit of a successful out-
come of the action. It is a question of whether or not
plaintiffs have the special capacity or authority to

bring this suit. Were they properly authorized as representatives of the trust fund?

██ We hold that plaintiffs need not allege or prove such capacity or authority. If the defendant desired to put such capacity or authority in issue, he should have specially alleged such lack of capacity or authority as a plea in abatement. See cases cited in 1 CJS 131, Abatement and Revival § 92f and 1 CJ 118, Abatement and Revival § 185. A failure to so plead waives any objection defendant might have had. ORS 16.330. The reason for the ruling is the old distinction between pleas in abatement and pleas in bar. In *Crowder v. Yovovich*, 84 Or 41, 48-49, 164 P 576, the court illustrated the difference. It said:

"* * * If A assaults B and injures him, and C brings an action for damages asserting that he was the person assaulted, and that fact is denied [a plea in bar], this does not raise an objection predicated upon his want of capacity to sue, but upon his right to recover. * * *"

The opinion then quoted from 1 CJ 28, § 9, a standard statement of the distinction:

" 'Matter in abatement, which goes merely to defeat or suspend the present suit, and does not conclude plaintiff from maintaining an action upon the cause stated, and which is, therefore, to be set up by plea or answer in abatement, is to be distinguished from matter in bar, which goes to the merits and shows that plaintiff has no cause of action.' "

If plaintiffs were not duly appointed this would not permanently bar representatives of the trust fund from maintaining a cause of action against defendant. Either the present plaintiffs could be duly appointed or other trustees could be duly appointed and bring the action.

The defendant urges that *Everart v. Fischer,* 75 Or 316, 323, 145 P 33, 147 P 189, is contrary to the above reasoning. There, the plaintiff mother brought an action as guardian ad litem for damages for personal injuries to her son. Plaintiff alleged she was the duly appointed guardian. Defendant filed a general denial. Plaintiff offered in evidence the order of her appointment as guardian. Over defendant's objection it was received. The order showed that it was granted on plaintiff's application and not on the application of plaintiff's 16 year-old son whom the statute required to make the application.

The court relied upon *Goodale Lumber Co. v. Shaw,* 41 Or 544, 69 P 546, a case holding that when a plaintiff's corporate existence is denied in the answer, its existence must be proved. This case will be further discussed. In *Everart v. Fischer,* supra, although there was a general denial and not a plea in abatement, the plaintiff at the trial did not question her obligation to prove her capacity to sue. She attempted to prove her capacity and in so attempting she proved conclusively her lack of capacity to sue. Inasmuch as the plaintiff's own evidence showed she had no capacity to sue, this court reversed a judgment for the plaintiff.

*Cockerham v. Potts,* 143 Or 80, 88, 20 P2d 423, distinguished *Everart v. Fischer,* supra. Plaintiff Cockerham was an administrator. Evidence was introduced that at the time of the original complaint, no letters of administration had been issued plaintiff; prior to trial, letters were issued. The court pointed out:

"It is not specially pleaded by defendants Lorett that plaintiff was not the real party in interest or that he had no legal capacity to sue." (at 90)

But it did not rest its decision on the pleading point. The court distinguished *Everart v. Fischer,* supra:

> "\* \* \* That case differs from the present case in this, that it was not a matter that could be cured by amendment but it was shown by the proof that the appointment of a guardian *ad litem* was an illegal one."

We reaffirm this distinction.

■ The question of plaintiffs' capacity or authority should be distinguished from one in which a plaintiff's capacity as a corporation is challenged. In this state if the defendant denies in his answer plaintiff's allegation that it is a corporation, plaintiff must then prove it is a corporation. *Goodale Lumber Co. v. Shaw,* supra (41 Or 544). Justice McBride in *The Multorpor Co. v. Reed,* 122 Or 605, 260 P 203, 55 ALR 504, reluctantly[1] accepted that to be the Oregon law. The court pointed out, however, that it had not always been the law in this state. The court believed it was more logical to have the issue raised by a plea in abatement as it believed a majority of the jurisdictions held. Stare decisis prevented an overruling of *Goodale Lumber Co. v. Shaw,* supra. The import of *The Multorpor Co. v. Reed,* supra, is that the principle that a plea in bar puts in issue the capacity of the plaintiff to maintain a suit should be limited to cases in which the corporate existence of the plaintiff is in issue.

■ In addition, the corporation cases must be limited to those in which the very existence of the corporation is in issue, as distinguished from a claim that an existing corporation has not performed certain acts which are conditions precedent to its right to bring a lawsuit. In the latter class of cases the issue must be raised by a plea in abatement. An example of this

latter class is *Oregon Timber Co. v. Seton,* 59 Or 64, 111 P 376, 115 P 1121. There, the contention was made that the planitiff could not maintain the suit because it had not paid its annual license fee. It was held this could only be raised by plea in abatement; the statute so specified.

■ Hindsight is a frequent source of wisdom. Nevertheless, we observe that if the trial court had used its inherent power to regulate its procedure, this question of the capacity of plaintiffs as trustees probably would not have been an issue on appeal. Our statute permits general denials. However, when a general denial is filed, the court and counsel cannot determine from the pleadings what the real issues of the lawsuit are. Some type of pretrial conference will uncover the issues. The trial courts have the inherent power to require such conferences. Rule 28 of the Rules of the Circuit Court of Multnomah County provides:

> "In any proceeding the Court may, in its discretion, direct the attorneys for the parties to appear before it for a conference to consider:
>
> "(1) The simplification of the issues;
> "* * * * *
>
> "(3) The possibility of obtaining admissions of fact * * *."

Without a formalized rule the trial court can require procedures which will unmask the issues.

Plaintiffs' lack of right or capacity was the only ground mentioned by the trial court in its letter opinion dismissing plaintiffs' causes of suit. An opinion, however, is not a substitute for findings of fact or conclusions of law. Therefore, we must examine the record to determine whether or not plaintiffs have proved the remaining essentials of their case. As re-

gards the first cause of suit, defendant does not contend plaintiffs were deficient in any other way than right and capacity to sue and the additional defenses alleged in defendant's affirmative defenses and counterclaim which will be taken up later. This court finds no other deficiencies.

The second cause of suit is for the period from 1959 to the filing of the complaint. Defendant contends that he never contracted to pay contributions for this period. Plaintiffs alleged that during this period defendant was a member of an organization called Willamette General Contractors Association (hereinafter called Willamette) and assigned his bargaining rights with labor to it. They further alleged that such association, on behalf of defendant and others, agreed that its members would pay health and welfare contributions. On information and belief defendant denied all the allegations of plaintiffs' second cause of suit, including the allegation that defendant was a member of Willamette General Contractors Association and assigned his bargaining rights to it.

There was a master labor agreement entered into between various labor organizations and employer organizations, including Willamette. Article XX of such agreement provided for the payment of health and welfare contributions by employers. The agreement provided, after naming the employer associations who were parties to the agreement:

"* * * (these parties being referred to hereinafter as the 'CONTRACTOR,' which word, for the purpose of this Agreement shall be read and construed to mean jointly or severally, as the context may call for, those members of the above associations whose names are set forth on Schedule 'B' or Supplement thereto), * * *."

This could reasonably mean the association's members were as set forth in Schedule B or Supplement thereto; however, defendant makes no such contention. No Schedule B or Supplement thereto was offered in evidence. All the local unions bound by the agreement were set forth in Schedule C, which was introduced into evidence as part of the master agreement.

The defendant executed no document evidencing his membership in Willamette or assigning his right to bargain with any of his employees or evidencing his acceptance of the master labor agreement. He paid no health and welfare contributions under the terms of such agreement. Nored testified he was never a member of Willamette. No constitution, articles of incorporation, bylaws or other internal agreement among the members of Willamette was introduced. No representative of Willamette testified. No record of Willamette listing its members or its members' rights and obligations was offered, except a "mailing list."

On the other hand, Nored paid dues to Willamette for about one year and probably at the time the master labor agreement was entered into. He received some literature from Willamette. He went to two meetings. A representative of the bank which administered the trust fund testified he had received a list from Willamette. This list was denominated a "mailing list" of Willamette. It had Nored's individual name, firm name and address mimeographed. After the bank received the list it put beside each name, including Nored's, a number which the bank's employee testified was a code number for IBM purposes.

This court must decide whether Nored was bound to pay contributions because of Willamette's entering into the master labor agreement.

Plaintiffs cite *Francis v. Perry,* 82 Misc 271, 144

NYS 167 (1913), for the proposition that the foregoing facts make Nored a member of Willamette. The issue in that case was the same but not the facts. That defendant admitted he was elected a member, voted at meetings, and was elected and served as an officer. *Electrical Contractors' Ass'n. v. A. S. Schulman El. Co.*, 391 Ill 333, 63 NE2d 392, 161 ALR 787 (1945), also had different facts than are presented here. There, the defendant thought it was a member; it applied for membership and its application was accepted.

We find that the defendant was not obligated to pay health and welfare contributions by reason of Willamette agreeing to the master labor agreement. Nored may have been a member of Willamette. That fact alone would not empower Willamette to obligate Nored to pay health and welfare contributions. We cannot say that a member of some kind of employer association, by membership alone, has thereby authorized the association to contract on his behalf in regard to his labor relations.

There is no evidence whatsoever as to the legal nature of Willamette. It has as part of its name the word "Association." Plaintiffs claim defendant was a "member." Defendant paid "dues." All these connote an unincorporated association. Officers acting on behalf of unincorporated associations are deemed agents and their authority determined by the law of agency. *United States Nat. Bank v. Guiss*, 214 Or 563, 583, 331 P2d 865 (a fraternal organization). A member of an unincorporated association is not obligated by a contract entered into by the association through its officers unless the member expressly or impliedly consented to become so obligated. *Cousin v. Taylor*, 115 Or 472, 239 P 96, 41 ALR 750. Here, no express consent was shown. We can find no implied consent.

The "mailing list" the bank employee testified was sent him by Willamette had the letterhead:

"Willamette General Contractors Association, Incorporated."

If Willamette was a corporation, the supposed relationship of Nored to it would be that of stockholder. Corporations normally do not have the authority to enter into contracts which obligate their stockholders individually. Stockholders are not usually referred to as "members" who pay "dues."

■ Plaintiffs had the burden of proving that Nored was obligated by the master labor agreement entered into by Willamette. They have failed in this proof.

■ Defendant alleged as an affirmative defense to the first cause of suit that the effective date of the written agreement whereby he contracted to pay health and welfare contributions was modified by a contemporaneous oral agreement. Nored had individually executed this earlier contract. The writing provided: "THIS AGREEMENT, Made and Entered into this 22 day of May 1956 by and between  *  *  *  shall be in full force and effect from date hereof to and including December 31, 1958,  *  *  *." Plaintiffs objected to any evidence in support of such affirmative defense on the ground that its admission would violate the parol-evidence rule. The trial court sustained the objection.

The defendant testified under the rule to the alleged oral agreement. He stated he did not want to obligate himself to pay health and welfare contributions unless the other home-building contractors in the Corvallis area also were so obligated. At his deposi-

tion defendant testified concerning this alleged oral agreement:

"A Well, as near as I can recall it through five years, almost six now, is that we was just assured that they would sign and if they didn't sign, we were led to believe that if they didn't sign that we were perfectly—that ours—but we were led to believe that ours wouldn't mean anything unless the rest of the home builders would sign.

"Q You don't remember any of the conversation other than that you had the impression that they were assuring you that all of the Corvallis home builders would be signed to this?

"A That is correct.

"Q And you don't remember any of the questions other than that you got the impression that they were assuring you that if all the other Corvallis home builders did not sign this would have no effect—this contract would have no effect on you?

"A That was the impression I had."

On cross-examination at the trial, after having the above read to him, Nored testified:

"Q Now, search your memory very closely, Mr. Nored. Did anybody specifically tell you that you would not be bound to this unless all of the Corvallis home builders signed?

"A Specifically, no."

Nored further testified that about six months after he signed the agreement he found not one home builder signed up; however, he said he continued to pay for awhile, hoping "some of the other fellows would line up." When a representative of the trust fund pressed defendant for an audit of his payroll he never mentioned the alleged parol agreement. The two union representatives specifically denied any oral agreement

or representations that the agreement would not be binding unless other home builders also agreed. One union representative testified six or seven Corvallis home builders signed up in 1956 and a total of about 13 during Nored's contract period.

Even if parol evidence were admissible, we find it weak, vacillating and insufficient to prove the alleged oral agreement.

■ Defendant further affirmatively alleged as a defense to the first cause of suit that labor officials falsely promised to him that they would get all house-building contractors in Corvallis to agree to pay health and welfare contributions. On this ground defendant asked that the contract be rescinded. The trial court dismissed this affirmative defense and counterclaim. The court was correct.

Nored's testimony received in support of this affirmative defense was not that the union representatives promised him they would sign up other house builders; rather, he testified: "They [union representatives] said that if the home builders in Corvallis, the balance of them, wouldn't go along with the contract and sign, that I had no worry about mine." There was no misrepresentation.

On plaintiffs' first cause of suit the decision of the trial court is reversed and remanded. Because of a prayer by plaintiffs for an audit, the trial court initially will have to decide this and eventually determine the amount owing by defendant.

The trial court's decree dismissing plaintiffs' second cause of suit is affirmed.

Reversed and remanded in part; affirmed in part. No costs to either party.