CARPENTERS & JOINERS WELFARE
FUND, et al., Respondents,

v.

PETER DUKINFIELD CO., Appellant.

No. 81–1108.

Supreme Court of Minnesota.

Aug. 20, 1982.

applies to prevent a less senior teacher from being put on unrequested leave.

Martin L. Garden and Steven C. Miller, Minneapolis, for appellant.

Peterson, Bell & Converse, Erwin A. Peterson and Pamela J. Converse, St. Paul, for respondents.

PETERSON, Justice.

In this action, four carpenter union fringe benefit trust funds seek an order compelling Peter Dukinfield Co. (a remodeling contractor) to disclose its employment and payroll records, and a judgment for any unpaid contributions discovered through auditing those records. The Hennepin County District Court required disclosure of these records, finding that the collective bargaining agreement—between the Twin City Carpenters District Council (union) and Minneapolis Builders Association (MBA)—provides for such disclosure and that Peter Dukinfield Co. ratified the agreement through its past conduct. Appellant argues against the result on two grounds: (1) the district court invaded the exclusive jurisdiction of the National Labor Relation's Board; and (2) the finding of ratification is unsupported by the evidence.

We affirm the district court's exercise of jurisdiction; we reverse the finding that appellant ratified the collective bargaining agreement.

Appellant, a member of MBA engaged exclusively in residential and commercial remodeling, has from time to time employed both union and nonunion carpenters and apprentices. Respondents are four employee fringe benefit trust funds providing health insurance, pension, vacation, and apprenticeship training programs for Twin City area carpenters.

Peter Dukinfield, president and treasurer of appellant, is a former vice president and current director of MBA. The labor committee of MBA negotiates contracts on behalf of certain of its members. This committee negotiated the collective bargaining agreement forming the basis of this appeal. Cletus M. McGlennen (executive vice president of MBA) signed the agreement on behalf of those employer's binding themselves to the agreement through an assignment of bargaining rights. McGlennen testified that he had never seen a list of those who were bound, that MBA had not attempted to secure written authorizations from its members for bargaining, and that he had no knowledge of any list being sent to the union indicating the parties to be bound.

Donald G. Jackson, executive secretary of the Twin City Carpenters District Council and trustee for three of the four trust funds, testified that, under negotiation procedures utilized with MBA, the union would initially obtain a list of employers who expected to be bound by the agreement. If an employer's name was not on the list, the union would request the employer to sign an individual contract. If the employer failed to return the contract within a specified number of days, the union's business agent would then visit the employer. Jackson admitted that a review of the union's files failed to reveal any documents indicating appellant's intention to participate in the contract. None was introduced at trial.

Appellant, when it occasionally employed both union and nonunion carpenters and apprentices, paid union carpenters union scale and paid nonunion carpenters approximately the same wages. Appellant, however, made contributions to the trust funds only for union carpenters. Article XX of the 1977–81 collective bargaining agreement requires payment for both union and nonunion carpenters covered by the agreement. On January 23, 1980, Allen A. Aydt, an auditor with the administrator of the trust funds, arrived at the office of appellant for the purpose of auditing the firm's employment and payroll records for carpenters and apprentices for the period 1977–1979. Rosemary Dukinfield, vice president and secretary of the firm, allowed Aydt to examine the payroll sheets of all union carpenters (approximately ten), but refused his request for the records of all employees of the firm, including nonunion carpenters. This lawsuit followed.

1. The threshold issue is whether the trial court lacked jurisdiction to hear the trust funds' complaint because of the exclusive primary jurisdiction of the National Labor Relations Board. *See e.g., San Diego Unions v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959); National Labor Relations Act, 29 U.S.C. § 158(a) (1976).

 Federal courts and state courts have concurrent jurisdiction over suits alleging a breach of a collective bargaining agreement under section 301(a) of the Labor Management Relations Act of 1947 (Taft-Hartley Act), 29 U.S.C. § 185 (1976).[1] *Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). As the Eighth Circuit Court of Appeals recently noted:

> The well entrenched general rule is that the fact that a particular activity may constitute an unfair labor practice under section 8 of the Labor Management Rela-

---

1. Section 301(a) of the Labor Management Relations Act of 1947 provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organi-

zations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

tions Act, 29 U.S.C. § 158, does not necessarily preclude the district court's jurisdiction under section 301 of the Act if that activity also constitutes a breach of the collective bargaining agreement.

*Local Union 204, International Brotherhood of Electrical Workers v. Iowa Electric Light and Power Co.*, 668 F.2d 413, 416 (8th Cir. 1982).

Appellant, however, cites *Couchigian v. Rick*, 489 F.Supp. 54 (D.Minn.1980) and argues that every time a party brings suit for breach of a collective bargaining agreement, and one party denies the agreements existence, a representation issue is raised— consigning the case to the exclusive jurisdiction of the National Labor Relations Board. *See* National Labor Relations Act, 29 U.S.C. § 159(b) (1976). Appellant's reliance on *Couchigian* is misplaced. In *Couchigian*, the court stated:

> [W]here * * * the existence of a collective bargaining agreement is at issue, *and that issue rests solely upon a factual determination concerning the appropriate bargaining unit* * * * section 9(b) of the NLRA is controlling, thereby vesting exclusive jurisdiction in the Board.

*Couchigian* at 57 (emphasis added). In the instant case, however, there is no issue of representation and *Couchigian* is clearly distinguishable. Moreover, in *Dowd Box Co. v. Courtney*, 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962), the landmark case establishing concurrent state and federal jurisdiction, jurisdiction of the state court was affirmed, although the employer denied the existence of a collective bargaining agreement. The trial court had jurisdiction under section 301(a).

2. The second issue concerns appellant's alleged ratification—through its conduct—of the 1977–81 collective bargaining agreement. Respondents also claim that appellant is estopped from claiming it is not bound. Because we conclude that appellant has not indicated the necessary "unequivocal intention" to be bound by the agreement and that the application of estoppel in this context is improper, we reverse.

The argument that appellant ratified the agreement through its conduct is based primarily upon the following considerations:

1. Appellant was and is a member of MBA, a party to the 1977–81 collective bargaining agreement with the union.

2. In 1970 MBA sent a letter to the union which listed the employers bound by the 1969–72 collective bargaining agreement between MBA and the union. Appellant was included on this list.

3. Appellant made contributions for a number of years to the fringe benefit trust fund, at a rate consistent with the existing collective bargaining agreement, for its union employees.

4. Appellant paid union employees union scale wages and paid nonunion employees approximately the same scale wages.

These considerations are insufficient to support the finding that appellant is bound to the 1977–81 collective bargaining agreement. In order to be bound by the terms of a group negotiation, a member of an employer association must have indicated from the outset an "unequivocal intention" to be bound in collective bargaining by group action. *Charles D. Bonanno Linen Service v. NLRB*, —— U.S. ——, 102 S.Ct. 720, 728–29, 70 L.Ed.2d 656 (Stevens, J., concurring); *Komatz Construction, Inc. v. NLRB*, 458 F.2d 317, 321 (8th Cir. 1972). "Absent such an unequivocal commitment to be bound by group action, an employer is free * * * to reject the terms of the final group contract." *Charles D. Bonanno Linen Service*, 102 S.Ct. at 729. *See Komatz Construction, Inc.*, 458 F.2d at 321.

Of course, mere membership in an employer association does not evidence such an unequivocal intention. *See Hann v. Nored*, 233 Or. 302, 313, 378 P.2d 569, 575 (1963). The fact that an employer signed previous agreements that the employer association had negotiated does not indicate an unequivocal intention to be bound to subsequent agreements. *Komatz Construction, Inc.*, 458 F.2d at 322. Furthermore, appellant's actions revealed an intention not to be bound by the terms of the 1977–81

agreement. Article XX of the agreement requires payments to the trust fund for both union and nonunion employees. Nevertheless, appellant made contributions to this fund only for its union employees.

▉▉▉ Respondents do not expressly assert that appellant indicated an unequivocal intention to be bound by the collective bargaining agreement; rather, they assert that appellant ratified the agreement by its actions. For an employer to ratify a contract by his actions, however, the employer must indicate an unequovical intention to be bound by the contract. In any event, formation of a contract may be predicated on the theory of adoption and ratification only if the underlying elements of mutual consent and obligation are manifest in some form. *Moglia v. Geoghegan*, 403 F.2d 110, 118 (2d Cir. 1968), *cert. denied*, 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969). *See Wagor v. Cal Kovens Construction Corp.*, 382 F.2d 813, 815 (5th Cir. 1967), *cert. denied*, 390 U.S. 952, 88 S.Ct. 1044, 19 L.Ed.2d 1145 (1968).

The case of *Hann v. Harlow*, 271 F.Supp. 674 (D.Or.1967), presents a fact situation strikingly similar to the present case. In *Hann*, the employer was a member of a builders association, but the association had no authority to bargain for him. He did not sign the labor agreement or trust agreement, but did make contributions to the funds for his union employees. In making these contributions, the employer signed a monthly report form indicating his intention to be bound by the trust agreement. Focusing on the employer's expectations and intentions, the court found that the employer was not liable to the funds for contribution for his nonunion employees. Similarly, in *Moglia v. Geoghegan*, the court rejected a ratification and adoption argument when the collective bargaining and trust agreement were unsigned by the employer—even though the employer paid union scale wages and made contributions to a trust fund.[2]

Finally, in *Local Union No. 529, United Brotherhood of Carpenters and Joiners of America v. Bracy Development Co.*, 321 F.Supp. 869 (W.D.Ark.1971), the court was faced with the identical adoption and ratification argument presented here. In that case, the construction company orally agreed with a union to pay hourly fringe benefits into the trust funds at the rates specified in the statewide master agreement. The employer was shown the agreement, but was never asked to sign it. The employer made these contributions and submitted periodic reports. The firm's office manager signed some of the report forms that had a provision indicating acceptance of the statewide agreement. Moreover, the parties negotiated, but failed to reach agreement, regarding the payment of fringe benefits for certain union carpenters. Again focusing on the employer's intent, the court concluded that the "proceeding fail[ed] to establish by credible evidence that the defendants evinced an intent at any time to adopt or ratify the agreement by their conduct or conversations with the plaintiff." *Id.* at 875. Similarly, respondents in this case also failed to establish consent of appellant to ratify the collective bargaining agreement.

▉▉▉ The district court also found appellant estopped from claiming that it is not bound by the collective bargaining agreement. The use of equitable estoppel in an action under section 301(a) of the Labor Management Relations Act requires the application of federal principles. *See Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 102–03, 82 S.Ct. 571, 576–577, 7 L.Ed.2d 593 (1962). A claimant under this doctrine must show (1) lack of knowledge and of the means to obtain knowledge of the true facts; (2) good faith reliance upon the misleading conduct of the party to be estopped; and (3) detriment from such reliance. *NLRB v. J. D. Industrial Insulation Co.*,

**2.** Neither party raises the issue of whether there was a sufficient "written agreement" present for purposes of section 302(c)(5)(B). National Labor Relations Act, 29 U.S.C. § 186(c)(5)(B) (1976). Appellant has not signed the instant agreement. In any case, we find appellant has not demonstrated the unequivocal intent needed to be bound.

*Inc.*, 615 F.2d 1289, 1294 (10th Cir. 1980); *United States v. Aetna Casualty & Surety Co.*, 480 F.2d 1095, 1099 (8th Cir. 1973). Estoppel is improper in this case because the union clearly had means of obtaining the true facts. Under the union's ordinary negotiation procedures with MBA, the union would initially obtain a list of the employers who expected to be bound by the collective bargaining agreement. If an employer's name was not on the list, the union would request the employer to sign an individual contract. The union failed to follow its own procedures in this case and made no attempt to clarify the situation. This is particularly significant in light of the union's admission that it had no documents in its files indicating appellant's intention to participate in the contract.

In summary, we conclude there is insufficient evidence to support the district court's findings that appellant ratified the 1977–81 collective bargaining agreement and was estopped from claiming that it was not bound. For this reason, we reverse.

Reversed.

YETKA, Justice (dissenting).

While I agree that the trial court had jurisdiction, I dissent from the majority's conclusion that ratification was not supported by the evidence. My examination of the record does not indicate that the trial court's decision was clearly erroneous. Minn.R.Civ.P. 52.01. In reaching its conclusion, the trial court could have relied on the following facts:

1. Peter Dukinfield Co. had been paying into the trust funds without interruption for nearly 20 years.

2. It abided by the current contract wage scales, vacation and holiday benefits for all union and non-union carpenters.

3. The trust fund deductions from union carpenters were consistent in amount with the terms of the negotiated collective bargaining agreement.

4. The company failed to maintain any internal records which indicated whether an employee was a union or non-union carpenter. This distinction could only be ascertained from individual payroll records by reviewing whether fringe benefit fund contributions had been deducted.

5. The trust funds never received any communication from the company indicating that, although the company was making contributions, it did not intend to be bound by the collective bargaining agreement.

6. In 1970, the association sent out a list of all employers covered by a bond guaranteeing that payments due would be paid into the fund. It appears that it has not been customary to renew that list annually nor to produce a list of employers who were bound by the agreement. The pension fund had a right to expect that any employer who had paid into the fund had agreed to abide by that contract because if no contract existed, the employer was not justified in sending the money nor was the pension fund justified in accepting the funds. *See* 29 U.S.C. § 186 (1976).

I think it unlikely that an employer would voluntarily break the law by making payments into the fund; therefore, I believe that the employer did, in fact, ratify, by his actions, the contract establishing the pension fund and the payments that would be made into the fund. Dukinfield, after all, was a sophisticated, former union member himself who had been an officer in the past and is still a director in the association. Accordingly, I would affirm.

TODD, Justice (dissenting).
I join in the dissent of Justice Yetka.

WAHL, Justice (dissenting).
I join in the dissent of Justice Yetka.

SCOTT, Justice (dissenting).
I agree with the dissent of Justice Yetka.